**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF MARYLAND**
**(Baltimore Division)**

| | | |
|---|---|---|
| **In re:** | * | |
| | | **Case No. 25-11237-NVA** |
| **E. E. MARR ERECTORS, INC.,** | * | |
| **Debtor.** | * | |

* * * * * * * * * * * * *

| | | |
|---|---|---|
| **MORGAN W. FISHER,**<br>**CHAPTER 7 TRUSTEE,** | * | |
| | * | |
| **Plaintiff,** | | **Adversary No. ___________** |
| | * | |
| **v.** | | |
| | * | |
| **SMITH-MIDLAND CORPORATION**<br>5119 Catlett Road<br>Midland, Virginia 22728, | * | |
| | * | |
| **TO BE SERVED ON:**<br>Gerald I. Katz, Resident Agent<br>7804 Brickyard Road<br>Potomac, Maryland 20854, | * | |
| | * | |
| **Defendant.** | * | |

* * * * * * * * * * * * *

**<u>COMPLAINT FOR TURNOVER</u>**

Morgan W. Fisher, the Chapter 7 Trustee herein (the "Trustee"), by his undersigned counsel, hereby sues Arban, Carosi & Diana Precast, LLC, seeking the turnover of property of the estate. In support thereof, the Trustee states as follows:

## Jurisdiction and Venue

1. This is an action seeking the turnover of property to the estate pursuant to 11 U.S.C. § 542(a) and/or the payment of a debt that is property of the estate pursuant to 11 U.S.C. § 542(b).

2. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334. This matter is a core proceeding as defined by 28 U.S.C. § 157(b)(2)(A), (E).

3. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409(a).

## Statement Pursuant to Fed. R. Bankr. P. 7008 and Md. L. Bankr. R. 7012-1

4. Pursuant to Fed. R. Bankr. P. 7008 and Md. L. Bankr. R. 7012-1, the Trustee hereby states that he consents to entry of final orders and judgments by the Bankruptcy Court.

## Parties

5. The plaintiff herein, the Trustee, was appointed to serve as interim trustee in the above-captioned bankruptcy case (the "Bankruptcy Case") commenced by the debtor, E. E. Marr Erectors, Inc. (the "Debtor"). No other trustee was appointed at the Debtor's meeting of creditors held on March 26, 2025. The Trustee has accepted his appointment, has qualified and is acting in that capacity.

6. The defendant herein, Smith-Midland Corporation (the "Defendant"), is a corporation organized under the laws of the Commonwealth of Virgina, and is registered to business in the State of Maryland as a foreign corporation.

## Background

7. The Debtor commenced the Bankruptcy Case by filing a voluntary petition under Chapter 7 of the Bankruptcy Code on February 14, 2025 (the "Petition Date").

8. The Defendant makes architectural precast panels - *i.e.*, large, durable concrete panels that are made off-site and transported to a construction site for installation, primarily as a commercial building's façade or cladding.

9. The Defendant serves as a contractor for various general contractors in the renovation and/or construction of commercial buildings. In doing so, the Defendant makes the architectural precast panels used on the exterior of these commercial buildings.

10. The Debtor was in the business of transporting, unloading, and erecting architectural precast panels onto commercial buildings.

***A. Defendant Retains Debtor's Services***

11. Prior to the Petition Date, the Defendant procured the services of the Debtor as a subcontractor to transport, unload, and erect architectural precast panels made by the Defendant at numerous projects for which the Defendant had been contracted by various general contractors.

12. Pursuant to the terms of the subcontracts executed by the Debtor, throughout the pendency of any project, the Debtor would submit periodic invoices seeking progress payments for work completed by the Debtor. Each progress payment was in an amount equal to the contractual amount due and owing at that particular stage of the project less a retainage of ten percent (10%) (the "Retainage"). After completion of a project, the Debtor would submit a final invoice (the "Final Invoice") seeking payment of all Retainage then due and owing for that particular project (the "Outstanding Retainage").

13. Upon receipt of a Final Invoice, the Defendant would submit for approval its own invoice to the general contractor in an amount equal to the Outstanding Retainage plus its own fees, costs, expenses due and owing at that time. Once the Defendant's invoice was approved, the

general contractor would pay the Defendant the full amount owed and, from that amount, the Defendant would pay the Debtor the Outstanding Retainage.

***B. Outstanding Retainages Owed to Debtor***

14. As of the Petition Date, according to the Debtor's books and records, there were five (5) projects for which the Defendant owes Outstanding Retainage to the Debtor:

**1. Broad Run 5R ($8,049.64)**

15. The Debtor entered into a subcontract with the Defendant for a project referred to as "Broad Run 5R" on or about July 18, 2022 (the "Broad Run Project").

16. On February 14, 2023, after completion of its work on the Broad Run Project, the Debtor submitted its Final Invoice to the Defendant for the Outstanding Retainage in the amount of $8,049.64. A true and correct copy of that Final Invoice is attached hereto as ***Exhibit A***, and is incorporated herein by reference.

**2. 3901 N. Fairfax 7R ($11,425.55)**

17. The Debtor entered into a subcontract with the Defendant for a project referred to as "3901 N. Fairfax 7R" on or about February 14, 2023 (the "Fairfax Project").

18. On October 20, 2023, after completion of its work on the Fairfax Project, the Debtor submitted its Final Invoice to the Defendant for the Outstanding Retainage in the amount of $11,425.55. A true and correct copy of that Final Invoice is attached hereto as ***Exhibit B***, and is incorporated herein by reference.

**3. Wake Forest ($83,491.70)**

19. The Debtor entered into a subcontract with the Defendant for a project referred to as "Wake Forest" sometime in 2023 (the "Wake Forest Project").

20. On May 15, 2024, after completion of its work on the Wake Forest Project, the Debtor submitted its Final Invoice to the Defendant for the Outstanding Retainage in the amount of $83,491.70. A true and correct copy of that Final Invoice is attached hereto as ***Exhibit C***, and is incorporated herein by reference.

**4. LECOM Millcreek ($1,202.84)**

21. The Debtor entered into a subcontract with the Defendant for a project referred to as "LECOM Millcreek" on or about December 15, 2023 (the "LECOM Project").

22. On October 14, 2024, after completion of its work on the LECOM Project, the Debtor submitted its Final Invoice to the Defendant for the Outstanding Retainage in the amount of $1,202.84. A true and correct copy of that Final Invoice is attached hereto as ***Exhibit D***, and is incorporated herein by reference.

**5. Fort Dix ($32,578.84)**

23. The Debtor entered into a subcontract with the Defendant for a project referred to as "Fort Dix" on or about October 10, 2023 (the "Fort Dix Project").

24. On December 23, 2024, after completion of its work on the Fort Dix Project, the Debtor submitted its Final Invoice to the Defendant for the Outstanding Retainage in the amount of $32,578.84. A true and correct copy of that Final Invoice is attached hereto as ***Exhibit E***, and is incorporated herein by reference.

***C. Total Outstanding Retainage***

25. In light of the above, the total amount of Outstanding Retainage owed to the Debtor by the Defendant is $136,748.57 (the "Total Outstanding Retainage").

***D.*** ***Trustee's Efforts to Collect Retainage***

26. By that letter dated and mailed to the Defendant on May 30, 2025, the undersigned, on behalf of the Trustee, informed the Defendant of the Bankruptcy Case (the "Turnover Letter"). The Turnover letter further requested payment of the Total Outstanding Retainage. A true and correct copy of the Turnover Letter is attached hereto as ***Exhibit F***, and is incorporated herein by reference.

27. The Defendant neither responded to the Turnover Letter nor paid the Total Outstanding Retainage. As such, on June 30, 2025, the undersigned telephoned and spoke with a person who identified herself as the Accounting Manager. The Account Manger requested a copy of the Turnover Letter and said that she would research the status of payment of the Total Outstanding Retainage. As she requested, on June 30, 2025, the undersigned email the Turnover Letter to the Account Manager.

28. To this date, despite the Turnover Letter, as well as the telephone conversation with and email to its Account Manager, the Defendant has neither paid the Total Outstanding Retainage nor informed the Trustee of the status of said payment.

29. The Defendant has not disputed the amount of the Total Outstanding Retainage.

**Count I**
**Turnover**
**(11 U.S.C. § 542(a))**

30. The Trustee incorporates by reference the allegations set forth in paragraphs 1 through 29 of this Complaint as though fully set forth herein.

31. The Total Outstanding Retainage is attributable to services rendered by the Debtor to the Defendant prior to the Petition Date and is therefore property of the Debtor's bankruptcy estate.

32. Upon information and belief, the Defendant has possession, custody, and control of the Total Outstanding Retainage.

33. The Total Outstanding Retainage is property that the Trustee may use under 11 U.S.C. § 363.

34. The Trustee believes that the Total Outstanding Retainage is not of inconsequential value to the estate.

WHEREFORE, the Trustee respectfully requests that the Court:

(A) Enter judgment in favor of the Trustee and against the Defendant in the amount of the Total Outstanding Retainage – *i.e.*, $136,748.57 - plus court costs, and pre- and post-judgment interest at the legal rate.

(B) Order the Defendant to turn over to the Trustee the sum of $136,748.57**.**

(C) Grant the Trustee such other and further relief as is just and proper.

**Count II**
**Turnover**
**(11 U.S.C. § 542(b))**

35. The Trustee incorporates by reference the allegations set forth in paragraphs 1 through 34 of this Complaint as though fully set forth herein.

36. The Total Outstanding Retainage is attributable to services rendered by the Debtor to the Defendant prior to the Petition Date and is therefore property of the Debtor's bankruptcy estate.

37. Upon information and belief, the Defendant has possession, custody, and control of the Total Outstanding Retainage.

38. The Total Outstanding Retainage is a debt owed by the Defendant to the Debtor that is matured and payable or demand and/or payable on order.

39. The Trustee believes that the Total Outstanding Retainage is not of inconsequential value to the estate.

WHEREFORE, the Trustee respectfully requests that the Court:

(A) Enter judgment in favor of the Trustee and against the Defendant in the amount of the Total Outstanding Retainage – *i.e.*, $136,748.57 - plus court costs, and pre- and post-judgment interest at the legal rate.

(B) Order the Defendant to turn over to the Trustee the sum of $136,748.57**.**

(C) Grant the Trustee such other and further relief as is just and proper.

/s/ Craig B. Leavers
Craig B. Leavers, Bar No. 26914
P.O. Box 306
Cockeysville, Maryland 21030
(443) 318-4526
Craig@LeaversLaw.com

*Attorney for Morgan W. Fisher, Chapter 7 Trustee*